Hazel Louise Radigan, *Adm'x vs.* W. J. Halloran Co.
Same *vs.* Halloran Construction Co. of Rhode Island.
Same *vs.* W. J. Halloran Co.
Same *vs.* Halloran Construction Co. of Rhode Island.

December 19, 1963.

Present: Condon, C. J., Roberts, Powers and Joslin, JJ.

CONDON, C. J. These actions of trespass on the case for negligence are here on the plaintiff's bill of exceptions to the ruling of a justice of the superior court sustaining the defendant's demurrer to the declaration in each case.

Each declaration is in seven counts. With respect to the issue raised by each demurrer the declarations are substantially identical. For this reason we shall consider the exceptions as though only one case were before us. Our decision of course will apply to all of the cases.

The facts out of which plaintiff's cause of action arose are alleged as follows. On April 2, 1959 defendant Halloran Construction Co. of Rhode Island was constructing a bridge on Hamlet avenue in the city of Woonsocket. The defendant W. J. Halloran Co., a subcontractor on the project, was engaged in hoisting, transferring and unloading concrete from trucks to the bridge abutments by means of a power crane. The crane was equipped with an extended boom 100 to 110 feet in length to which a steel bucket was attached by cables. An uninsulated high tension power line carrying 110,000 to 115,000 volts crossed directly over the westerly end of the bridge about 70 to 75 feet above the ground.

On the day in question plaintiff's decedent was employed as a fireman by the city of Woonsocket and was on the third floor of a fire station in the vicinity of the bridge project when the boom came into such proximity to the high tension power line as to cause a current of electricity to travel underground along an unused electrical conduit, where it burned a hole in a 12-inch gas main causing a gas leak. The leaking gas penetrated to the third floor of the fire station where it caused an explosion, resulting in the death of plaintiff's decedent.

The declaration alleges that defendant knew or should have known of the existence of the uninsulated power lines and that direct or near contact of the crane therewith would cause electricity of high voltage to escape. It further alleges that defendant had a duty to exercise due care in operating the crane so that such operation would not cause electricity to escape and injure the decedent, but that not-

withstanding such duty it so carelessly and negligently operated the crane as to cause electricity to escape and produce the explosion which resulted in the death of the decedent. In substance these are the allegations of the first four counts.

Counts Nos. 5 and 6 allege breaches of defendant's duty in operating its crane in proximity to the overhead high voltage lines to observe regulation No. 12 of the Rhode Island Industrial Safety Code, subsections 5.1 and 5.2, promulgated by the Rhode Island Industrial Safety Code Authority pursuant to G. L. 1956, §§28-19-4 to 28-19-8 inclusive.

Count No. 7 alleges that defendant in operating its crane in the manner it did created and maintained a nuisance which resulted in the death of plaintiff's decedent. The count further alleges that defendant knew or should have known that the existence of such conditions surrounding its operation of the crane created a danger and menace to persons lawfully in the vicinity amounting to a nuisance.

The defendant demurred to the first four counts on the following grounds: 1. No proper legal duty is alleged. 2. No actionable negligence is alleged. 3. The alleged negligence of defendant's agent or servant was not a proximate cause of the injury to plaintiff's decedent. 4. Such injury was not a foreseeable result of the alleged negligence of defendant's servant or agent. 5. That it was not the natural and probable consequence of the alleged negligence. 6. The declaration is otherwise vague, uncertain and indefinite.

The demurrer to the fifth and sixth counts is based substantially on the same grounds and in addition the following, namely, that each of such counts fails to state a cause of action in that G. L. 1956, §28-19-4 et seq., upon which the count is based is penal and does not give rise to a civil action.

The demurrer to the seventh count also is grounded in part on the general allegations of the demurrer to the first four counts but also more particularly on the ground that the facts alleged in the seventh count do not, as a matter of law, constitute a nuisance.

In none of the counts is it alleged that defendant knew, or in the exercise of due care should have known, that there was a 12-inch gas main and a 1¼-inch conduit of unknown origin in the ground; that a one-inch hole was burned in the main permitting gas to escape through cracks in the manhole; or that the gas was capable of penetrating the fire station and, in conjunction with the unleashed electric voltage, causing an explosion in the fire alarm headquarters on the third floor of the station where plaintiff's decedent was working.

In the absence of such allegations, the alleged negligence of defendant consisted solely in so operating its crane as to permit electricity to escape from the power line. If, as a direct result of such negligence, plaintiff's decedent was injured, a good cause of action would have arisen. This was substantially the situation in *Agostini* v. *W. J. Halloran Co.*, 82 R. I. 466, *Rott* v. *Blackstone Valley Gas & Elec. Co.*, 82 R. I. 111, and *Burdick* v. *South County Public Service Co.*, 54 R. I. 310, upon which plaintiff relies. But such is not the situation in the case at bar.

The manner in which the electricity released by the alleged negligence of defendant was caused to travel to the fire station and produce there a gas explosion involved several dominant factors of which, *as far as the allegations of the declaration go*, defendant knew nothing. Although it appears from such allegations that defendant's operator could have reasonably foreseen that electricity would be released by the crane coming in contact with the power line, it cannot be inferred therefrom that he could have foreseen that it would travel underground in conjunction

with the conduit and the gas main and cause an explosion in the fire station a considerable distance away from the bridge project. In other words, the ultimate harm to the decedent resulted from so many important and unknown factors as to preclude the act of the operator from being reasonably deemed to be actionable negligence in relation to the decedent.

For this reason a portion of 2 Restatement, Torts §435, Comment a, p. 1173, relied upon by plaintiff and quoted in her brief, does not apply. Rather the following portion thereof which she refrained from quoting seems to us to be especially appropriate to the allegations in question here: "However, the manner in which the harm occurs may involve the co-operation of other assisting factors so many and important that the actor's negligence cannot be regarded as a substantial factor in bringing about the harm * * *. So too, the manner in which the harm occurs may be so highly extraordinary as to prevent the actor's conduct from being a substantial factor in bringing it about * * *."

In our opinion the allegations of negligence do not state an actionable wrong to the decedent. As was said in *West Virginia Central & Pittsburg R.R.* v. *State,* 96 Md. 652, 666: "In every instance before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury." In the case at bar nothing is alleged that would lead the operator of the crane to foresee that the electricity escaping from the power line would follow the course it did and by the co-operation of other factors underground and unknown to the operator would enter the fire station, commingle with escaping gas and emerge in the room where the decedent was working, and cause an explosion. In other words, the allegations of the declaration do not reasonably apprise defendant of any duty which it owed to the decedent..

128

In support of this view we rely upon the law as laid down in *Palsgraf* v. *Long Island R.R.*, 248 N.Y. 339. It was expressly stated therein at page 344 that: "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension * * *." Since *Palsgraf* was decided we have had occasion to refer to it and have indicated that it was acceptable authority in analogous cases here. *Phelps* v. *Burrillville Racing Ass'n*, 73 R. I. 84, 86; *Kane* v. *Burrillville Racing Ass'n*, 73 R. I. 264, 266. In *Phelps* and *Kane*, however, we distinguished the factual situations therein from those in *Palsgraf* and pointed out wherein they differed. Inferentially we accepted the New York court's view of the law but did not recognize it as applicable to the facts before us in those cases. At least we did not reject it and hence we are of the opinion that the trial justice did not err in concluding that if the alleged facts in the instant case so warranted he was justified in applying thereto the law of the *Palsgraf* case and sustaining the demurrer to the first four counts.

As to counts 5, 6 and 7 we see no reason for any lengthy discussion. Counts 5 and 6 are based upon a statute governing employers for the protection of their employees and regulations pursuant thereto the breach of which does not give rise to a cause of action, at least to one not an employee. Count 7 does not state a good cause of action based upon nuisance. It does not allege a private nuisance since the wrong complained of is not an interference with the use or enjoyment of land. *Iafrate* v. *Ramsden*, 96 R. I. 216, 190 A.2d 473. Nor does it allege a public nuisance since the interest of the plaintiff alleged to be adversely and wrongfully affected by the defendant's acts is one peculiar to the plaintiff and not one which she holds in common with the public and the violation of which has caused her special damage. Prosser, Torts (2d ed.), chap. 14, §71,

p. 402. Therefore the sustaining of the demurrer to each of these counts was not error.

All of the plaintiff's exceptions in each case are overruled, and each case is remitted to the superior court for further proceedings.

*Louis M. Macktaz,* for plaintiff.

*Higgins & Slattery, Eugene V. Higgins,* for defendant.